John McGEE, Appellant,

v.

SOUTH PEMISCOT SCHOOL DISTRICT
R–V, a political subdivision; Gary Bru-
ton, individually; and Mitchell Fisher,
individually, Appellees.

No. 82–1984.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1983.

Decided July 11, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 11, 1983.

Joy L. Koletsky, Nat. Educ. Ass'n, Julia Penny Clark, Bredhoff & Kaiser, Washington, D.C., David G. Beeson, Buerkle, Lowes, Beeson & Ludwig, Jackson, Mo., for appellant John McGee.

James E. Reeves, Ward & Reeves, Caruthersville, Mo., for appellees.

Before ARNOLD and BENNETT,* Circuit Judges, and HENLEY, Senior Circuit Judge.

ARNOLD, Circuit Judge.

John McGee, a school teacher, brought this action under 42 U.S.C. § 1983 after he lost his job. He claimed that his employer, the South Pemiscot School District, fired him because he had written a letter to the editor. A jury found that McGee's First Amendment rights had been violated and awarded him $10,000 against the School District and two board members, Mitchell Fisher and Gary Bruton. The District Court, however, granted defendants' motions for a judgment *non obstante veredicto* and a conditional new trial. *McGee v. South Pemiscot School District R–V*, 545 F.Supp. 171 (E.D.Mo.1982). The District

---

* The Hon. Marion T. Bennett, United States Circuit Judge for the Federal Circuit, sitting by designation.

Court held that there was insufficient evidence to support the jury's finding that the school board's failure to renew McGee's contract was motivated by conduct protected by the First Amendment. It also held that there was insufficient evidence to support an award of damages and that the school board, since the vote on the motion to rehire McGee was a three-to-three tie, had committed no act for which it could be held liable. We disagree with each of these holdings and therefore reverse and remand for entry of judgment on the jury's verdict and for further proceedings with respect to equitable relief and attorney's fees.

## I.

McGee started teaching at South Pemiscot in 1977. Beginning in 1978 he coached junior and senior high school track. As late as March 1980, a month before his contract came up for renewal, there was every indication that he would be teaching at South Pemiscot the following school year.[1] He had received a satisfactory evaluation, and the principal had recommended that his contract be renewed. He was assigned classes, and it was understood that he was to coach senior-high track. Three of the six board members publicly praised or supported McGee. Mitchell Fisher commended McGee's coaching abilities during a school-board meeting. June Jones wrote a letter to the newspaper praising McGee and noting how popular he was among students and parents. On March 21 Gary Bruton told Robbie Sue Tennyson, the editor of the local newspaper, that he supported McGee.

A divided school board decided to discontinue junior-high track in March 1980. This decision sparked a public controversy. Parents circulated petitions asking the board to reinstate the track program. The board refused. The fate of the track program became an issue in the campaign for school board. On March 20 *The Steele Enterprise*, the only newspaper in South Pemiscot

County, published a letter to the editor signed by three of the six board members— Bruton, Fisher, and Jack Harris.[2] In it they attempted to justify the board's decision to discontinue the track program and claimed that McGee had recommended that they do so. On March 27, four days before the school-board election, the paper published a letter from McGee. He denied recommending that junior-high track be discontinued and stated his reasons for supporting junior-high track.

On April 3, shortly after the election, McGee's contract came up for renewal before the board. He needed a majority vote. The board voted 3–3, and the motion to renew McGee's contract failed. Bruton, Fisher, and Harris voted against renewal.

McGee commenced this suit on October 2, 1981, and the case was tried before a jury. Conflicting evidence was given as to why McGee's contract was not renewed. Ms. Tennyson testified that Bruton complained to her about McGee's letter immediately after it was published and that in a conversation shortly after the nonrenewal Bruton said that McGee was fired for having written the letter (Tr. 79–80). McGee testified that Bruton told him that he voted against him because the letter showed disloyalty to the board and made the board look bad (Tr. 118). Another witness testified that Fisher said he wanted to fire McGee for having written the letter (Tr. 24). McGee testified that School Superintendent Billy Gene Lewis told him that writing the letter was an act of disloyalty and warranted his dismissal (Tr. 125). After McGee was fired, Lewis told the remaining coaches not to discuss school problems in public.

Fisher, Bruton, and Harris testified that they voted against renewing McGee's contract because he could not follow "rules and regulations." They cited his inability to work with the athletic director, his inability to keep a tidy classroom, and his having

---

1. At the time of his dismissal Mr. McGee had been teaching at South Pemiscot for three years. In Missouri a teacher is on probation for five years before achieving tenure. Mo. Ann.Stat. § 168.104(5) (Vernon Supp.1983).

2. Bruton was running for re-election.

bought track uniforms without asking the proper authorities. McGee paid for these uniforms with his own money. The other three board members, who had voted in McGee's favor, testified that if they had the opportunity to vote again they would vote against him. They also made the general assertion that McGee could not follow orders. The principal also recanted his recommendation for renewal, and the superintendent, athletic director, and a former board member testified that McGee couldn't work well within the school's bureaucracy.

## II.

■ Citizens do not relinquish all of their First Amendment rights when they become public employees. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The state, on the other hand, "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general," and courts must "arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734. Each case turns on its facts, but *Pickering*'s guidelines are fairly clear. As a general rule, a school board may not dismiss an employee for criticizing school policies that are of public interest unless the speech contains knowingly or recklessly false statements, undermines the ability of a teacher to function, or interferes with the operation of the school. *Id.* at 568–74, 88 S.Ct. at 1734–38.

Defendants contend that McGee's letter was not constitutionally protected because (1) it did not address a public issue, (2) it contained erroneous statements, and (3) it

created disharmony between McGee and his immediate supervisors. Their argument is without merit.[3]

■ The letter addressed the fate of junior-high track. That had certainly become a public issue. Members of the community circulated a petition asking that the school board reconsider its decision. Junior-high track had become a campaign issue during the school-board elections. Moreover, some members of the school board, including the individual defendants who lost before the jury, had made it a public issue by defending their decision in a letter written to the only newspaper in town.

■ The school board contends that the letter contained errors. That alone will not remove it from the protection of the First Amendment. The errors must have been knowingly or recklessly made. *Pickering, supra,* 391 U.S. at 574, 88 S.Ct. at 1737. The school board does not now contend that this is the case.

■ It was for the jury to decide whether the letter created disharmony between McGee and his immediate supervisors. The trial judge instructed the jury that its verdict had to be for the defendants if it believed that McGee's "exercise of free speech had a disruptive impact upon the employees of Defendant, South Pemiscot School District R–V" (Designated Record (D.R.) at 18). The jury obviously found that the letter did not have a disruptive impact, and there is sufficient evidence to support that view. The letter may have strained McGee's relationship with some of the board members, but they were not McGee's immediate supervisors, and McGee's relationship with them would not affect his ability to function as a teacher. Nor would it directly affect school operations.[4]

---

**3.** The District Court held as a matter of law that the letter was not the motivating factor for dismissing McGee. It did not say whether the letter was constitutionally protected speech and seems to have thought that it was.

**4.** This case stands on an entirely different footing from *Connick v. Myers,* — U.S. ——, 103

S.Ct. 1684, 75 L.Ed.2d 708 (1983). In that case the plaintiff was discharged for circulating a questionnaire in her office inquiring about the effect of personnel policies on employee morale and the overall performance of the office. The Supreme Court reversed the lower court's holding in favor of the plaintiff. It did so because

## III.

It is not enough for a teacher to show that he or she was fired after engaging in constitutionally protected conduct. The plaintiff also bears the initial burden of showing that this conduct was a motivating factor in the board's decision not to rehire. The burden then shifts to the defendants. They must show by a preponderance of evidence that they would have reached the same decision in the absence of the protected conduct. *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

### A.

The District Court granted the school board's motion for a judgment n.o.v., holding that there was insufficient evidence for a jury to find that McGee passed the *Mount Healthy* test. If either Bruton or Fisher had voted in favor of McGee, the vote would have been 4–2, and McGee would have been rehired. The jury verdict must, therefore, stand if there is sufficient evidence that either school-board member voted against McGee in retaliation for his having written the letter.

The standards for granting a judgment n.o.v. are well settled. Both the trial court and this Court must (a) consider the evidence in the light most favorable to the prevailing party, (b) assume that the jury resolved all conflicts of evidence in favor of that party, (c) assume as true all facts which that party's evidence tended to prove, (d) give that party the benefit of all favorable inferences which may reasonably be drawn from proved facts, and (e) deny the motion if in light of the above reasonable jurors could differ as to the conclusions that could be drawn from the evidence. *Hanson v. Ford Motor Co.,* 278 F.2d 586, 596 (8th Cir.1960) (Blackmun, J.). After apply-

ing this test to the case at hand, we think it is clear that the District Court erred in concluding that "the evidence is all against plaintiff" and "reasonable minds could not disagree on a verdict for defendants."

Before the letter was written there was every indication that McGee's contract would be renewed. He was listed on the 1980–81 teacher payroll, and he had already been assigned classes (Plaintiff's Exhibit 19). Board members Fisher and Jones publicly commended him during board meetings held on March 10 and March 17, 1980 (Plaintiff's Exhibits 26, 27), and as late as March 17, 1980, Bruton assumed that McGee would coach track in 1980–81 (Plaintiff's Exhibit 27). On March 21 Bruton said he would not vote against renewing McGee's contract (Tr. 79). It seems more than coincidence that by April 3, 1980, one week after the letter was published, Fisher and Bruton had reevaluated McGee and determined that he was unfit to teach.

In addition to this suspicious sequence of events the jury heard and evidently believed that Fisher, Bruton, and Lewis told McGee and others that they fired McGee for writing the letter. One witness testified that Fisher said "if John McGee had left Steele Enterprise newspaper alone he wouldn't have no problem right now" (Tr. 24). Ms. Tennyson testified that she asked Bruton why McGee was fired. He responded, "because of that letter to the editor" (Tr. 80). McGee testified that School Superintendent Lewis gave him the following reason for his termination:

[Y]ou are supposed to be loyal to this school. Whenever you say things that embarrass the school or say things that we don't like, you will get what's coming to you. You know, you'll get terminated.

(Tr. 125).

Other witnesses testified against McGee, but it is for the jury to decide whom to

plaintiff's speech "touched upon matters of public concern in only a most limited sense," *id.* 103 S.Ct. at 1693, and this limited First Amendment interest did not require that the employer "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *Id.* 103 S.Ct. at 1694.

The Court, however, reiterated that each case turns on its facts. *Id.* We have before us a case where the plaintiff wrote a letter to a newspaper about an issue that had already been publicly aired by the defendants.

believe. McGee presented more than enough evidence for a jury to find that the letter was the motivating factor behind the dismissal. The jury certainly could have found that the defendants failed to show by a preponderance of the evidence that McGee's contract would not have been renewed even in the absence of the letter. The board members who voted for McGee testified that they would not do so again, but the jury did not have to believe them, and in any case such evidence is irrelevant. What counts is what happened when the vote was actually taken, and why.

The District Court granted defendants' motion for a judgment n.o.v. on the additional ground that McGee suffered no damages as a result of losing his job. He finished the school year, later found a higher paying job, and as a result lost no wages. The award, however, does not represent compensation for lost wages. McGee incurred expenses in order to obtain new employment. He had to move, give up a low-rent house, and commute farther to work. He also claimed mental anguish and loss of professional reputation. The jury was within its rights in awarding McGee $10,-000.[5]

Defendants also argue that the school district cannot be held liable because a majority did not vote against McGee. They would have us believe that a tie vote is not an act or policy for which they can be held responsible. This argument is untenable. The tie vote was in the circumstances of this case a decision to dismiss McGee and an "act" for which the school board can be held liable. See *Monell v. Department of Social Services*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978).

### B.

A closer question is whether or not the District Court erred in granting defendant's motion for a new trial in the event that the

judgment n.o.v. should be reversed on appeal. We conclude that it did.

It is within the trial court's discretion to grant or deny a new trial based on its reading of the evidence. This discretion is not, however, unlimited. The trial judge may not usurp the functions of a jury. The jury weighs the evidence and credibility of witnesses. The trial court can disturb a jury verdict only to prevent a miscarriage of justice. *Fireman's Fund Insurance Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 187 (8th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). See 11 Wright & Miller, *Federal Practice and Procedure* § 2819, at 125–26 (1973). A trial judge should be particularly reluctant to grant a new trial "[w]here the subject matter of the litigation is simple; where there exists no complicated evidence or where the legal principles presented are such that they would not confuse the jury . . . ." *Fireman's Fund Insurance Co. v. Aalco Wrecking Co., supra,* 466 F.2d at 187.

We are confident that the jury verdict in favor of McGee was not a manifest injustice. As shown above, there was ample evidence for the jury to find that the letter was the motivating factor in the board's decision not to renew McGee's contract. If there had been strong evidence that McGee was a bad teacher who would have been released even in the absence of the letter, we should affirm the District Court's order for a new trial. But this is not the case.

The record suggests that McGee is a good teacher. He organized a popular and successful track team from scratch. All the parties seem to agree that he is enthusiastic and committed to the welfare of his students. The defendants contend that they fired him because his classroom was untidy, he failed to confer with the athletic director on scheduling sports events, and he bought uniforms for the track team without asking

---

5. Our decision today does not conflict with *Smith v. Board of Educ.*, 365 F.2d 770 (8th Cir.1966). In that case the improperly fired teacher found a new teaching position paying double his former salary. *Id.* at 783. He spe-

cifically testified that the new job was the "best thing that ever happened to [him] employment-wise." *Id.* at 784. Here, McGee contends that he suffered various losses as a result of having to leave South Pemiscot.

anyone. McGee bought the uniforms with his own money and without expecting reimbursement. The school subsequently felt obligated to reimburse McGee but asked him not to make such outlays again. He complied with this request. McGee does not deny that his art classroom was messy, but this seems to have been, at least in part, because the classroom was small, and there was not enough storage space. It does appear from the record that McGee did not work well with the athletic director. This is not, however, to say there were confrontations between them, or even that they were not friendly to each other. McGee would go to the principal and not the athletic director for scheduling athletic events.

We are not convinced that the jury committed a manifest injustice when it found that the school board fired McGee for writing the letter and not because of his failings as a teacher. The jury could of course have gone the other way, but it chose not to do so, and the evidence in McGee's favor was so strong that it was an abuse of discretion to reject the jury's verdict and order a new trial.[6]

## IV.

For the reasons given, the judgment of the District Court is reversed, and this cause is remanded to it with instructions to enter judgment on the jury verdict. In addition, the District Court should consider McGee's requests for equitable relief [7] and attorney's fees.

It is so ordered.

HENLEY, Senior Circuit Judge, dissenting.

I am constrained to hold that the district court properly granted defendants' motion for judgment n.o.v. largely for reasons articulated by the district court. In any event, if liability be assumed, I believe the case must be remanded for a new trial on the issue of damages.

I have no quarrel with the court's opinion as it relies on *Pickering,* although the rationale of that case should be extended sparingly, if at all, to marginal first amendment cases. However, the court's pathway via *Mount Healthy* to the conclusion that the verdict must stand if either Bruton or Fisher voted against McGee in retaliation is one I cannot tread with comfort.

I agree that a tie vote resulting in failure to rehire is an "act" for which a school board can be held liable in some circumstances, but the "act," in order to carry liability, must rest on some illegal custom, policy or practice of the board. If three members voted against McGee and only one of those voted for prohibited reasons, this court would hold the district responsible. I can read no such responsibility into *Monell,* relied upon by the court, nor into any reported case decided in this circuit. Nor should *Mount Healthy* be so read. It did not involve any discussion of responsibility of the school district for the vote of a single board member and I am unwilling to assume that a factor that motivates a single board member motivates the board to such an extent as to place any burden of proof on the school district.

With respect to damages, it is clear that the verdict of $10,000.00 is excessive. Plaintiff claimed a maximum of only $7,000.00. It is conceded that plaintiff lost no wages as a result of the nonrenewal of his contract. There is also no dispute that after the close of the 1979–80 school year, he secured a teaching position for the fol-

---

**6.** The school board also argues that it is entitled to a new trial because the jury instructions were inadequate. The trial court did not grant a new trial because of any error in its instructions to the jury, and in fact there was no such error.

**7.** Defendants contend that McGee does not want to be reinstated. At trial McGee gave conflicting responses when asked whether he wanted to be reinstated (Tr. 159–60). He seems, however, to have been confused by counsel's line of questioning. In a motion for equitable relief and attorney's fees, filed six days after the favorable verdict, McGee specifically asked that he be reinstated (D.R. at 24). Normally reinstatement is appropriate in this kind of case, but we leave that question to the discretion of the District Court in the first instance.

lowing academic year in another school system at a higher salary, and obtained a position with a third school system the next year. Moreover, in the second year he was employed also as full time minister at a local Church of Christ. He has more than mitigated any small expense he might have had for moving, job hunting and the like. While he may pay more rent now than he paid before, there is no showing that his living quarters are not vastly superior to those he chose to occupy in Pemiscot County.

Finally, his claim of mental anguish and loss of reputation are hardly credible in view of his employment and pastoral history. Indeed, like the fired teacher in *Smith v. Board of Education of Morrilton School District No. 32*, 365 F.2d 770 (8th Cir.1966), his new work is the best thing that ever happened to him.

In sum, I would affirm in its entirety the judgment of the district court and insist that at least this court, if it is determined to find liability, should remand for a new trial on the issue of damages.