733 F.2d 74
 17 Ed. Law Rep. 475
 Patti HINKLE, Appellee,
v.
Eugene CHRISTENSEN, Individually and as a member of the
Kadoka Board of Education; Ben Handcock; Ardith Swisher;
Joe Stoddard; Saxon Williams; Dan Addison and Keith Berry,
Individually and as a member of the Kadoka Board of
Education, and Layton Arnold, Individually and as
Superintendent of the Kadoka School District
The Kadoka School District No. 35-1, Appellant.
 No. 82-2313.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1983.
Decided May 2, 1984.
 
 Linda Lea M. Viken, Finch & Viken, Rapid City, S.D., Jeremiah A. Collins, Gary L. Sasso, David M. Silberman, Bredhoff & Kaiser, Washington, D.C., for appellee.
 David A. Gerdes, May, Adam, Gerdes & Thompson, Pierre, S.D., Robert A. Sambroak, Jr., Kadoka, S.D., for appellant.
 Before BRIGHT, JOHN R. GIBSON, and FAGG, Circuit Judges.
 FAGG, Circuit Judge.
 
 
 1
 Patti Hinkle brought this civil rights action against the Kadoka School District No. 35-1, its superintendent, and members of its board of education following her dismissal from employment as a teacher at the school. The jury returned a verdict and awarded damages against the school district, but against none of the individual defendants, on Hinkle's claims under 42 U.S.C. Sec. 1983. The jury denied recovery on Hinkle's claims under 42 U.S.C. Sec. 1985. We affirm.
 
 
 2
 During her tenure at Kadoka High School, Hinkle was one of the more active participants in the Kadoka Education Association (KEA). For a time Hinkle was president of this union composed of Kadoka School District teachers. In 1978 she became the KEA's chief negotiator, and hence the union's main representative in collective bargaining negotiations between KEA and the Kadoka School District. Ultimately, on behalf of KEA, Hinkle filed unfair labor practice charges against the school district's board of education and superintendent with the South Dakota Department of Labor. The charges were consolidated and scheduled for a hearing on January 24, 1979. The board of education voted unanimously on January 23, 1979, to dismiss Hinkle. She was notified of the board's action the next day after she returned to school from the unfair labor practice hearing. The board cited as the reason for its action an incident in which it was alleged that Hinkle had used offensive language in a discussion with a student.
 
 
 3
 The board reached its decision to dismiss Hinkle without giving her prior notice of its intended action; according to the terms of the notice of termination, Hinkle's dismissal was effective upon its delivery. The notice of termination further advised Hinkle that if she so requested a hearing would be provided after which the board would decide whether to "sustain or revoke its original determination to terminate [her] employment." Hinkle did not request a post-termination hearing, however. At trial she testified that she had not done so because she thought that a hearing could not have changed the board's decision. The minutes of the January 23, 1979 board meeting, including the resolution adopted by the board pertaining to Hinkle's dismissal, were published in the Kadoka Press a weekly newspaper of general circulation. In its resolution the board stated that Hinkle "had used language which was improper, indecent and immoral," demonstrating a "flagrant neglect of duty," and that a review of her personnel file "indicated that she had been reprimanded previously for the use of improper language in school."
 
 
 4
 Hinkle sought recovery under 42 U.S.C. Sec. 1983 on three grounds: (1) that she was dismissed because of her union activities in violation of her First Amendment freedoms of speech and association, (2) that her dismissal without a hearing beforehand worked a deprivation of her property interest in continued employment without procedural due process, and (3) that she had been deprived of liberty to seek and obtain employment through the release of stigmatizing information without her having been afforded procedural due process. In addition to its general verdict the jury found, in response to special interrogatories, that Hinkle was dismissed from her teaching job because of her labor union activities and that she was denied the ability to seek and obtain employment as a result of statements made about her by the defendants.
 
 
 5
 On appeal the school district contends that the evidence was insufficient to support the jury's determination that Hinkle was dismissed because of union activities and maintains that the offer of a post-termination hearing fulfilled procedural due process requirements, given the exigency of removing from the classroom a teacher who had used offensive language. Accordingly, the school district contends that the district court committed error by refusing to grant its motions for a directed verdict and for judgment notwithstanding the verdict or in the alternative for a new trial.
 
 
 6
 The school district's other contentions all pertain only to the trial of Hinkle's procedural due process claims. It is argued that the district court committed error when it (1) directed a verdict in Hinkle's favor on the issue whether she had been deprived of property without due process, (2) excluded proffered opinion testimony dealing with the asserted need for Hinkle's expeditious removal from the classroom, (3) refused to instruct the jury that Hinkle had been afforded due process if, following a hearing involving the same evidence relied upon by the board in its decision, Hinkle would have been dismissed nevertheless, and (4) instructed the jury that with respect to her claim of deprivation of liberty without due process Hinkle had not received a hearing at a meaningful time in a meaningful manner.
 
 
 7
 While Hinkle sought damages on several grounds, in order to sustain the jury's verdict we need only find that Hinkle is entitled to recover on the basis of one of her claims. See LeSuer Creamery, Inc. v. Haskon, Inc., 660 F.2d 342, 346 & nn. 6-7 (8th Cir.1981), cert. denied, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); see also Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 683 (11th Cir.1983); Engine Specialties, Inc. v. Bombardier Ltd., 605 F.2d 1, 15-17 (1st Cir.1979), cert. denied, 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). The jury specifically found that Hinkle was dismissed for engaging in union activities, and thus if the verdict can be sustained on this ground we may affirm without considering the school district's allegations of error pertaining to the trial of Hinkle's procedural due process claims. See Silverberg, supra, 710 F.2d at 683; LeSuer Creamery, supra, 660 F.2d at 346 & nn. 6-7; Engine Specialties, supra, 605 F.2d at 17.
 
 
 8
 The measure of damages for dismissal on account of protected First Amendment activity includes all injuries compensable under the district court's general instructions on damages, which covered both First Amendment and procedural due process claims, i.e., loss of income from the date of termination, losses arising from damage to professional reputation, and mental pain and suffering. See McGee v. South Pemiscot School District R-V, 712 F.2d 339, 344 (8th Cir.1983); Greminger v. Seaborne, 584 F.2d 275, 279 (8th Cir.1978). As a consequence, the jury's specific finding that Hinkle was dismissed because of her union activities enables us to pretermit consideration of the procedural due process issues without concern that the verdict may be permitted to stand on a ground not subjected to review.
 
 
 9
 The only argument advanced by the school district applicable to Hinkle's First Amendment claim is that the evidence was insufficient to support a finding that Hinkle was dismissed for engaging in protected First Amendment activities and that the district court thus erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict or in the alternative a new trial. However, as we stated in Giordano v. Lee, 434 F.2d 1227 (8th Cir.1970), cert. denied, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971), and have often repeated: "A directed verdict is in order only where the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." Id. at 1231 (emphasis in original). See, e.g., Dace v. ACF Industries, Inc., 722 F.2d 374, 375 (8th Cir.1983); Tribble v. Westinghouse Electric Corp., 669 F.2d 1193, 1195 (8th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983); Smith v. Hussmann Refrigerator Co., 619 F.2d 1229, 1235 (8th Cir.) (en banc), cert. denied, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980).
 
 
 10
 The standard applied to a motion for judgment notwithstanding the verdict is the same as that used to decide a motion for directed verdict. Tribble, supra, 669 F.2d at 1195; Smith, supra, 619 F.2d at 1235. Accordingly, in considering a defendant's motion for judgment notwithstanding the verdict the district court and this court must (1) consider the evidence in the light most favorable to the plaintiff as the prevailing party, (2) assume that the jury resolved all conflicts in the evidence in favor of the plaintiff, (3) assume as true all facts which the plaintiff's evidence tends to prove, (4) give the plaintiff the benefit of all favorable inferences which may reasonably be drawn from the facts proved, and (5) upon reviewing the evidence in this light, deny the motion if reasonable jurors could differ as to the conclusions that could be drawn from it. McGee, supra, 712 F.2d at 343; Brown v. Missouri Pacific Railroad, 703 F.2d 1050, 1052 (8th Cir.1983).
 
 
 11
 When we apply these standards in the present case, it is apparent that the district court did not err in denying the school district's motions for directed verdict and judgment notwithstanding the verdict. The jury could reasonably have concluded that the proffered reason for Hinkle's dismissal was a pretext. Included in the record is evidence of the superintendent's hostility toward union activities by teachers, threats by the superintendent to retaliate against the teachers for the filing of the unfair labor practice charges, and the implementation of restrictive measures against the teachers by the superintendent with approval of the school board. Indeed, the board of education voted to dismiss Hinkle at a meeting ostensibly held to discuss the unfair labor practices hearing scheduled for the very next day. In addition, the jury could have inferred that investigation of the classroom language incident before the board meeting was superficial, that evidence of Hinkle's alleged unsuitability for teaching was weak, and that, particularly in view of available temporary suspension procedures, the precipitancy of the board's action was incompatible with its assertion that Hinkle was dismissed for use of unacceptable language. There is thus ample evidence in the record to support the jury's determination that Hinkle was in fact dismissed because of her union activities, and it would have been inappropriate for the district court to have denied her the outcome of the jury's deliberations.
 
 
 12
 We similarly find no reason to disturb the district court's denial of the school district's motion in the alternative for a new trial. We have already held that the record reveals no reversible error concerning Hinkle's recovery for violation of her First Amendment rights. Accordingly, we will not reverse the denial of the motion for a new trial unless that action constituted an abuse of discretion. See Barnes v. Wyrick, 719 F.2d 962, 963 (8th Cir.1983); Pitts v. Electro-Static Finishing, Inc., 607 F.2d 799, 803 (8th Cir.1979). This discretion was not abused by the district court.
 
 
 13
 The judgment of the district court is affirmed.