Amber WALKER, Plaintiff,

v.

**FRED NESBIT DISTRIBUTING CO., Defendant.**

No. 4:03–CV–90115.

United States District Court, S.D. Iowa, Central Division.

Feb. 14, 2005.

---

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court is Plaintiff's Motion for New Trial (Clerk's No. 63). On March 3, 2003, Plaintiff, Amber Walker ("Walker") initiated an employment discrimination action against her former employer, Fred Nesbit Distributing Co. ("Nesbit"). Defendant filed a motion for summary judgment (Clerk's No. 16), which was granted in part and denied in part (Clerk's No. 33). As articulated by this Court, there were genuine issues of material fact regarding Plaintiff's claims of sex discrimination based on her pregnancy. A jury trial began on November 8, 2004, and judgment was returned in favor of the Defendant on November 12, 2004 (Clerk's No. 62). Plaintiff filed the present Motion for New Trial contending that the jury's verdict was not supported by the clear weight of the evidence. Defendant filed a Resistance Brief (Clerk's No. 65) to which Plaintiff Replied (Clerk's No. 66). The matter is fully submitted.

## I. BACKGROUND

Amber Walker brought a pregnancy discrimination claim against her former employer, Fred Nesbit Distributing Company, pursuant to 42 U.S.C. § 2000e–2(a), as defined and codified by § 2000–e(k). Prior to her termination on August 29, 2002, Walker was employed as a beer truck delivery driver at Nesbit. In fact, Walker was the only female delivery truck driver at Nesbit. As a delivery truck driver, Walker's duties included: delivering products; rotating back stock; stocking shelves; building and maintaining displays; and picking up old and/or damaged products. These duties required that the drivers obtain a Class A commercial driver's license and have the ability to lift fifty pounds.

authoCharles E. Gribble, Parrish Kruidenier Moss Dunn Montgomery Boles & Gribble, LLP, Joann Stone, Parrish Kruidenier Moss Dunn, Boles Gribble & Cook LLP, Des Moines, IA, for Amber Walker, Plaintiff.

William W. Graham, Des Moines, IA, for Fred Nesbit Distribution, Defendant.

In January of 2002, Walker became pregnant and notified her supervisor, Jerry Braatz ("Braatz"). Braatz directed Walker to meet with Arthur Sween ("Sween"), Nesbit's Human Resource Director and Comptroller. Walker met with Sween for the first time on April 17, 2002. At that time, she requested light duty or help with her assigned duties. Sween denied Walker's request. Walker met with Sween again on April 26, 2002, and produced a doctor's note, which indicated that Walker could lift no more than twenty pounds. On April 29, 2002, Walker again requested light duty or assistance with her assignment and was denied. Instead, Sween informed Walker that she would be given the standard twelve weeks of unpaid leave under the Family Medical Leave Act ("FMLA"), plus an additional six weeks, totaling eighteen weeks of unpaid leave. Sween told Walker that if she could not return to work after those eighteen weeks, she could be terminated. Walker never signed the FMLA agreement form. Walker gave birth to her daughter, Loki Marie, on August 21, 2002. On August 27, 2002, the same day the extended FMLA leave expired, Walker provided Sween with a note from her doctor explaining that she should not return to work until October 4, 2002, because of the fifty-pound lifting requirement. Sween terminated Walker's employment on August 29, 2002.

Walker's discrimination claim was based on the contention that Nesbit had a policy of providing light duty or reassignment to employees that were injured off-the-job. She argued that she was denied this accommodation, at least in part, because of her pregnancy. Nesbit defended its actions by admitting that it previously had an unwritten practice wherein it would provide light duty to employees injured off-the-job, but made an unwritten policy change in September 2001, to limit the accommodation to only employees injured on-the-job. Neither the old policy nor the new policy ever appeared in the employee handbook. Sween explained that the policy change was motivated by a situation in which an employee, Charles Starmer, was injured off-the-job and was accommodated for an extended period of time. Since light duty accommodation necessitated an extra employee to be in the delivery truck, Nesbit stated that it made the policy change for economic reasons. The decision to continue to allow employees with on-the-job injuries to be given light duty "derived from the fact that, through the worker's compensation process, the company was paying employees injured on-the-job anyway and so it made sense to put them to work performing jobs for which the company would not otherwise hire an additional employee." Def.'s Br. at 4. Plaintiff argued that the alleged policy change was merely a pretext for discriminating against her based on her pregnancy.

At trial, each party thoroughly presented its case to the jury. The jury's duty was to determine whether or not Plaintiff was treated differently than similarly situated Nesbit employees and, if so, whether the disparate treatment was motivated by her pregnancy. On November 12, 2004, the jury returned a verdict for the Defendant. In her motion for new trial, Plaintiff contends that such verdict was a miscarriage of justice.

## II. MOTION FOR NEW TRIAL

"A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59. The power to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied*

*Chem. Corp. v. Daiflon,* 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). While a trial court certainly has the power to grant a new trial, when exercising its discretion, the role and function of the jury is not to be trivialized. "The district court can only disturb a jury verdict to prevent a miscarriage of justice." *See Beckman v. Mayo Found.,* 804 F.2d 435, 439 (8th Cir. 1986) (citing *McGee v. South Pemiscot Sch. Dist. R–V,* 712 F.2d 339, 344 (8th Cir.1983)).

■ Since this country's inception, an individual's right to trial by jury, in both civil and criminal matters has been held to be of the utmost importance. The Seventh Amendment states:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII. The jury is the traditional finder of facts in a trial, and as such, the " 'judge may not usurp the functions of the jury ... [which] weighs the evidence and credibility of witnesses.' " *See White v. Pence,* 961 F.2d 776, 780–81 (8th Cir.1992) (quoting *McGee,* 712 F.2d at 344). The distinct roles between the court and the jury must be recognized and followed. For example:

> Whether the evidence, when offered, is admissible, is a question for the court; but when admitted, the question whether sufficient or not is for the jury, and it is their province to draw from it all such inferences and conclusions as it conduces to prove, and which, in their judgment, it does prove, and their finding is conclusive, unless a new trial is awarded by the court in which the case is tried, or in the appellate tribunal, for some error of law.

*Barreda v. Silsbee,* 62 U.S. 146, 167, 21 How. 146, 16 L.Ed. 86 (1858). The respect for the sound judgement of the jury is such that the court "will not disturb a jury's verdict unless [it] determine[s] that no reasonable juror could have found for the non-moving party based on the trial record." *See Sanders v. May Dep't Stores Co.,* 315 F.3d 940, 943 (8th Cir.2003) (citing *Moring v. Arkansas Dep't of Corr.,* 243 F.3d 452, 455 (8th Cir.2001)). No court, trial or appellate, should "invade the jury's domain" unless the court can "properly label [the jury's] decision as irrational." *United States v. Samuels,* 808 F.2d 1298, 1301 (8th Cir.1987) (Arnold, R., J., concurring).

■ It follows, therefore, that a motion for new trial cannot be granted simply because the trial judge disagrees with the jury's reasoning. "Where reasonable men can differ in evaluation of credible evidence, a new trial on the ground of weight of the evidence should not be granted." *White,* 961 F.2d at 781. At the onset, "[i]t must be assumed that the facts of the case have been correctly found by the jury." *Barreda,* 62 U.S. at 166, 21 How. 146.

> It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion.

*Lavender v. Kurn,* 327 U.S. 645, 652, 66 S.Ct. 740, 90 L.Ed. 916 (1946). A jury's verdict is less likely to be unreasonable where the evidence presented at trial is not complicated and the legal principles involved are not likely to confuse a jury. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.,* 466 F.2d 179, 187 (8th Cir. 1972) (citing *O'Neil v. W.R. Grace & Co.,* 410 F.2d 908, 913 (5th Cir.1969); *Lewin v. Metropolitan Life Ins. Co.,* 394 F.2d 608, 614–15 (3rd Cir.1968); *Tidewater Oil Co. v. Waller,* 302 F.2d 638, 643 (10th Cir. 1962)); *see also Latino v. Kaizer,* 58 F.3d 310, 314 (7th Cir.1995) (ruling that jury verdicts in cases with highly disputed facts and simple issues are given greater deference). However, "[r]egardless of the rhetoric used the true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred." *Fireman's Fund,* 466 F.2d at 187. A miscarriage of justice only occurs when, based on the admitted evidence, the jury returns a verdict that is clearly not supported by the evidence.

### III. DISCUSSION

Plaintiff argues that a miscarriage of justice occurred when the jury returned a verdict in favor of the Defendant. Specifically, Plaintiff argues that she met her burden of proof and the verdict was contrary to the "clear weight" of the evidence. It is important to note that it was Plaintiff who held the ultimate burden of proof in her claim of pregnancy discrimination. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In order to return a verdict in favor of the Plaintiff, the jury needed to affirm both of the following statements:

First, when Plaintiff was denied light duty or a reassignment she was treated differently than one or more male employees who were similarly situated in all relevant aspects of their ability or inability to work; and

Second, Plaintiff's pregnancy was a motivating factor in the Defendant's employment decisions. Pregnancy was a "motivating factor" if Plaintiff's pregnancy played a role in Defendant's decision to refuse accommodation, light duty or reassignment, to Plaintiff. However, it does not require that Plaintiff's pregnancy was the only reason for Defendant's employment decisions.

Final Jury Ins. No. 5. It cannot be known if the jury replied no to both questions or merely to one of them. However, it is clear that both needed to be answered in the affirmative for Walker to be successful in her suit. It is equally clear that, upon the evidence, it is reasonable that the jury answered either question in the negative.

Plaintiff's argument at trial was that she was treated differently than two groups of similarly situated male employees when she was denied light duty or reassignment. The first group included Nesbit employees who had been convicted of an Operating While Intoxicated ("OWI") offense and lost their Commercial Drivers License ("CDL"). The second group included male employees injured off of the job who could not fulfill the lifting requirements of the job. There is a question of whether or not drivers convicted of OWIs are similarly situated to Plaintiff, but there is no question that those in the OWI group were treated differently. Conversely, there is no question that drivers injured off-the-job who could not fulfill the lifting requirements are similarly situated to Plaintiff, but it is unclear whether those in that group were treated any differently than was Walker. Even if the jury found that either group was similarly situated, Walker needed to provide evidence to show that any disparate treatment was motivated by her pregnancy.

Prior to September 2001, the parties agree that Nesbit allowed light duty assignments for employees injured off-the-job. Nesbit, however, stated that it made a policy change in September 2001, discontinuing this practice for economic reasons. Walker argued that the alleged September 2001 policy change, which did not appear in the handbook, was merely a pretext for pregnancy discrimination. The evidence surrounding the light duty policy change presented a question of fact for the jury to decide. The following evidence was presented to the jury, from which it determined the policy change was not pretext for discrimination.

### A. *Drivers who received an OWI Charge*

 "The test for whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 568 (8th Cir.2000) (citing *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 (8th Cir.1994)). Plaintiff, however, applied a very simple "similarly situated" test: "1) employed by Nesbit; 2) employed in the same or similar job to that held by Ms. Walker; and 3) as a result of an off-the -job incident unable to fulfill all the functions of the job." Pl. Br. at 5. In actuality, in cases of pregnancy discrimination, a comparison must be made between the pregnant woman and "others not so affected but similar in their ability or inability to work." 42 U.S.C.2000e(k). Walker was unable to work because she could not fulfill the fifty-pound lifting requirement. In contrast, employees with an OWI were unable to work because they lost their CDL. A driver who is limited in his or her ability to drive is distinguishable from a driver who is limited in his or her ability to lift delivery boxes. Nonetheless, there is no question that employees who received an OWI were treated differently than was Walker. Even assuming that drivers who received OWIs are similarly situated, however, it was reasonable for the jury to accept Nesbit's legitimate non-discriminatory reasons for treating drivers who lost their license differently than an employee who had a lifting restriction for more than eighteen weeks.

As the handbook states, employees who lose their CDL are forced to immediately resign. "If your position requires you to use a Commercial Drivers License (CDL) on a daily basis, and you lose your CDL, your employment with us will be terminated. If you resign, you will be eligible to reapply as a sales trainee." Ex. 21, at Addendum 3. Walker, in contrast, was not forced to resign, but was given eighteen weeks FMLA leave. Plaintiff maintained, however, that she was given less favorable treatment than drivers who received an OWI. She specifically highlighted a situation involving Mr. Cowie, another delivery truck driver. Mr. Cowie received an OWI and resigned, but he was reinstated within a week to a different position, as soon as the paperwork was complete, which took approximately a week. Defendant defended the different treatment on the basis that OWI employees could still fulfill jobs that had lifting requirements, such as warehouse assignments. Defendant further pointed out that rehire is not a guarantee for those who resign, and specifically that Walker was never disallowed from reapplying. In fact, Walker testified that she never did reapply for employment at Nesbit. It is not unreasonable that the jury found that Walker was not discriminated against as compared to Nesbit's treatment of employees who received an OWI.

### B. *Employees injured off-the-job*

The other group of employees that Walker claims were similarly situated are male employees injured off-the-job who could not perform the heavy lifting requirement. Plaintiff identified employees

injured off-the-job who were accommodated by Nesbit. Defendant explained that previously, it had allowed light duty accommodation to employees injured off-the-job, but changed that practice for economic reasons following an incident with Charles Starmer in September 2001. Plaintiff recognizes that Defendant had the right to change its policy with respect to its practices, but believes there was no evidence that its practices were changed. Pl.'s Br. at 6. Based on the evidence presented, the Court cannot say it was, in fact, unreasonable for the jury to conclude that the September 2001 policy change was the motivation for Nesbit's employment decisions regarding Walker, and that her pregnancy was not a motivating factor.

The jury heard testimony from the following Nesbit employees who were injured off-the-job: James Sassatelli; Mark Miler; Charles Starmer; and Tommy Williams. At trial, each of these witnesses testified that he had received light duty following an off-the-job injury that affected his ability to fulfill the lifting requirements of the job. All four testified at trial that his injury occurred prior to September 2001. Mr. Williams' testimony at trial conflicted with his previous deposition testimony, where he indicated that he was provided light duty assistance after September 2001. Mr. Williams explained this inconsistency by stating that he had been confused at the time of the deposition as to which of his two injuries the questions referred. Mr. Williams testified, at trial, that he had suffered two off-the-job injuries: 1) a shoulder injury prior to September 2001 where he was accommodated; and 2) a hamstring injury in July 2002, for which he received no accommodation. Plaintiff did not present any evidence to show improper motive for Mr. Williams to change his story. Based on the provided information, the jury was free to "weigh the evidence and credibility of witnesses." *White*, 961 F.2d at 781. The evidence presented showed the last Nesbit employee to receive light duty accommodation was Starmer. Starmer was injured in September 2001 and was given assistance at least through October 19, 2001. Nesbit explained that, prompted by the Starmer situation and by economic reasons, the company decided to only allow light duty accommodation to those injured on-the-job. Plaintiff presented no employees at trial who claimed to have received light duty accommodation after September 2001.

There was, however, evidence at trial concerning two Nesbit employees who were injured off-the-job after September 2001–Mr. Sims and Mr. Hamilton. Neither employee was given light duty accommodation. Plaintiff argues, however, that neither Sims nor Hamilton ever requested light duty, as she had. Both Sims and Hamilton were required to use their accrued vacation and sick pay. Also, both Hamilton and Sims were absent for a significantly shorter period than was Plaintiff. In fact, Walker's lifting restrictions were of a longer duration than any other Nesbit employee who testified at trial. In the case of Walker, she did not have enough accrued vacation and sick time to cover the entire time that her lifting restriction was in effect. Thus, unlike Walker, Hamilton and Sims were not forced to take unpaid FMLA leave because they had enough vacation and sick time to cover the leave period necessary to recover from their injuries.

Plaintiff spends a significant amount of time discussing the procedure that Nesbit should have followed when implementing a policy change. The employee handbook states: "No change, modification or deviation, in whole or in part, to Nesbit Distributing's policies, programs or practices is binding unless approved in writing by an officer of the Company." The evidence at trial was undisputed that Nesbit did not

follow this procedure regarding the September 2001 policy change. Defendant explained that Nesbit never had a formal written policy regarding light duty and, therefore, did not believe that the September 2001 decision needed to be in writing. Regardless, the question before the jury was not whether Nesbit should have put the September 2001 policy change in writing, but whether a "discriminatory animus [laid] behind the defendant's neutral explanations." *Roxas v. Presentation Coll.*, 90 F.3d 310, 316 (8th Cir.1996). Whether an employer followed proper procedure and whether an employer engaged in illegal discrimination are two separate questions. One may be evidence of the other, but the presence of one does not mean the other is necessarily true. Even if Nesbit was incorrect in its procedure, if the September 2001 decision was applied indiscriminately, it shows that Plaintiff's pregnancy was not the motivation behind her denial of light duty accommodation. "While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination." *Clay v. Hyatt Regency Hotel*, 724 F.2d 721, 725 (8th Cir.1984). Simply put, the jury determined that Defendant was truthful when it stated that its decisions surrounding Walker's situation were prompted by the September 2001 policy change and not motivated by her pregnancy. Even though the September 2001 policy change never appeared in the employee handbook, no witness was presented to the jury who stated unequivocally that light duty had been provided following an off-the-job injury after September 2001. The jury's verdict was within its discretion and was sound based on the evidence.

## IV. CONCLUSION

A jury's role in our justice system is not to be taken lightly. The jury is the traditional finder of facts, whose job it is to weigh the evidence and, ultimately, decide which side to believe. Plaintiff had the burden of proof to show that she was discriminated against, based in part on her pregnancy. Defendant stated that its decisions were motivated by a September 2001 policy change. The jury entered a verdict for the Defendant and there is nothing in the record to indicate that its verdict was against the clear weight of the evidence. As the jury's verdict was reasonable, no miscarriage of justice occurred which would necessitate a new trial. Accordingly, Plaintiff's Motion for New Trial (Clerk's No. 63) is DENIED.

IT IS SO ORDERED