**James W. WYLY, Plaintiff-Appellee,**

v.

**BURLINGTON INDUSTRIES, INC.,**
**Defendant-Appellant.**

**No. 71–2120**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1971.

---

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F.2d 409, Part I.

William Duncan, El Paso, Tex., for defendant-appellant.

Sam Blackham, Mike Thompson, El Paso, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and IN-GRAHAM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

James W. Wyly was a contestant in "the National Lap Sitting Contest" when a chair proved unable to support him and the 14 co-eds who were sitting on his lap. The chair broke. Wyly was injured. He brought suit against Burlington Industries, Inc., which sponsored the contest. The trial court instructed the jury that defendant was liable for the injuries as a matter of law, and plaintiff won a $13,000 verdict.

Holding that the defendant was entitled to have a jury determine whether the plaintiff voluntarily exposed himself to a known and appreciated danger so as to bar his recovery under the Texas doctrine of *volenti non fit injuria,* we reverse.

### The Law

This being a diversity suit, Texas law is applicable. The Texas doctrine of *volenti* has been set forth by the Supreme Court of Texas in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, at p. 379 (Tex.1963), as follows:

"The *volenti* doctrine is an affirmative defense. 'Volenti' is a contraction of the Latin phrase, *volenti non fit injuria,* which means legally that a plaintiff may not recover for an injury to which he assents; that a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger. In this state, the decision to incur the risk must have been deliberate; i. e., made with knowledge and appreciation of the danger so that it may be said that the person acted as a result of an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). Logically, a plaintiff cannot make an intelligent choice to confront a risk if he does not actually know of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof. Thus, while the cases speak of the requirement of *actual* knowledge and appreciation, the plaintiff may not close his eyes to obvious dangers; and he may not recover where it is shown that he is in possession of facts from which he would be legally charged with appreciation of the danger. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952)."

The same court later capsulized the requirements of the *volenti* defense as follows:

"The requirements for such a defense are (1) the plaintiff has knowledge of facts constituting a dangerous condition or activity; (2) he knows the condition or activity is dangerous; (3) he appreciates the nature or extent of the danger; and (4) he voluntarily exposes himself to this danger." J. & W. Corporation v. Ball, 414 S.W. 2d 143, 146 (Tex.1967).

■ The *volenti* doctrine "precludes recovery by a plaintiff even though the defendant is guilty of negligence proximately causing the injury." Stephens v. Texas Electric Service Co., 436 S.W.2d 572, 573 (Tex.Civ.App.1969, writ ref., n. r. e.).

■■ We follow a Federal standard to determine whether the evidence is sufficient to require submission to a jury. The standard has been set forth by this court in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969). Applying that standard here, we must consider all of the evidence drawing all reasonable inferences most favorable to Burlington. If, viewed in that light, reasonable and fair-minded men might reach different conclusions, the case must be submitted to the jury.

### The Evidence

There was essentially no dispute in this relatively short trial as to the following facts. Other than the doctor,

only two witnesses testified: the plaintiff and Bob Reed, who was a representative of Burlington, called by plaintiff as an adverse witness. Two pictures taken while the contest was in progress showing a roomful of college students were put in evidence.

As part of an advertising campaign for wrinkle-resistant slacks, the defendant was promoting "the National Lap Sitting Contest" on college campuses. The object of the contest was to stack co-eds on a contestant's lap, with the winner having the lap which holds the most co-eds for a 10 second period. The prize was three or four pairs of slacks and a night on the town. Such a contest was held at the University of Texas at El Paso where plaintiff was a student.

When the plaintiff's turn came to participate, 14 co-eds were placed on his lap, which would have broken the existing record. But the pressure of the contest became too great and the chair collapsed injuring plaintiff. Shortly after the contest began, a different and supposedly less sturdy chair had collapsed under a previous contestant and fewer co-eds. Although the defendant's representative was not present at the time the first chair broke (the students had jumped the starting gun), he was advised of the collapse upon his arrival. The representative then obtained the chair which he had originally asked to have used in the contest. Plaintiff used this chair. While the contest continued, defendant's representative attempted to call a local chair manufacturer to obtain "as good a chair as the company had." The chair used by plaintiff was described as an armless wood office chair with four firm legs, a four inch main supporting piece across the top of the back and four or five one-inch dowels anchored into the seat portion of the chair.

The record contained testimony that when the plaintiff went to the Student Union Building the program had not started; that he was present during the entire program until his accident; that one chair broke under the weight of one man and some girls; that the chair that was used thereafter was a typical wood armless office chair; that plaintiff knew he weighed 240 pounds and intended to hold fourteen girls who weighed about 100 pounds each; that the girls were to be picked up and laid across each other, on his lap, and that the weight was unstable and was ill-distributed; and that he intended to hold the weight, with none of the girls touching the floor, for a period that would be timed.

*The Decision*

The dispute in this case involves whether on this evidence the jury could find that plaintiff voluntarily submitted himself to a known and appreciated danger.

Drawing the inference from this evidence most favorable to the defendant, we think that reasonable and fair-minded men could find that the plaintiff knew that such a condition was dangerous. The Texas Supreme Court has stated that the *volenti* doctrine is a subjective one concerned with the individual plaintiff. Halepeska v. Callihan Interests, Inc., *supra*. A determination of what a particular person knew, appreciated or understood is peculiarly within the province of the jury. United States v. De La Barra, 447 F.2d 193, 195 (5th Cir. 1971). No great technical knowledge would be required for a person of plaintiff's intelligence to know that if you put too much weight on a chair it will collapse, that a chair built for the normal use of one person might be in danger of collapse with the weight of 15 people on it, and that the person undergirding the rest would be in danger of injury in such a collapse. The jury could have found that the plaintiff knew the nature and extent of this danger and voluntarily exposed himself to it.

Although plaintiff denied that he knew that the first chair collapsed, he was apparently in the room at the time. His credibility must be determined by the jury. In any event, the importance

of the knowledge of that fact, or the lack of such knowledge, was for the jury.

Accordingly, we hold that the district court should have submitted the issue of *volenti non fit injuria* to the jury.

Reversed and remanded.