Loyd S. DACE, Appellant,

v.

ACF INDUSTRIES, INC., Appellee.

No. 83–1024.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1983.
Decided Nov. 30, 1983.
Rehearing Denied Feb. 16, 1984.

Michael P. Bastian (argued), and Nangle
& Nangle, P.C., Bruce Nangle, Clayton,
Mo., for appellant.

Law Offices of Gerald Tockman, A Professional Corporation, Louis N. Laderman (argued), St. Louis, Mo., for petitioner.

Before BRIGHT, ARNOLD, and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

■ Loyd Dace appeals from the District Court's order dismissing his action against ACF Industries, Inc., for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. Dace charges that ACF demoted him from his position as a supervisor in the punchpress department of a carburetor factory to a job as an hourly worker in the assembly department of the factory because of his age. He asserts that ACF demoted him rather than a younger employee with less seniority because it would save money by demoting an employee with more seniority. The case was tried before a jury. After the close of the defendant's case, the District Court, 553 F.Supp. 545, granted the defendant's motion for directed verdict without allowing the plaintiff to present rebuttal testimony, although the plaintiff did make an offer of proof indicating the substance of that testimony. On appeal the plaintiff argues that the District Court erred in granting ACF's motion for directed verdict.[1] We agree that the case should have been allowed to go to the jury, and we therefore reverse and remand for a new trial.

## I.

In reviewing the District Court's decision to direct the verdict in favor of ACF, we must first determine the standard for directed verdicts. This Court has said many times that

a directed verdict should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.

*Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.,* 523 F.2d 833, 836 (8th Cir.1975). See, *e.g., Tribble v. Westinghouse Electric Corp.,* 669 F.2d 1193, 1195 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983); *Smith v. Hussmann Refrigerator Co.,* 619 F.2d 1229, 1235 (8th Cir.1980) (en banc), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980); *Barclay v. Burlington Northern, Inc.,* 536 F.2d 263, 267 (8th Cir.1976).

We have also often quoted the standard we first articulated in *Giordano v. Lee,* 434 F.2d 1227, 1231 (8th Cir.1970), *cert. denied,* 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971), that

a motion for directed verdict is properly denied where the evidence presented allows reasonable men in a fair exercise of their judgment to draw different conclusions.... In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party.

See, *e.g., Tribble, supra,* 669 F.2d at 1196; *Smith, supra,* 619 F.2d at 1235; *Vickers v. Gifford-Hill & Co.,* 534 F.2d 1311, 1315 (8th Cir.1976).

■ We have interpreted the instruction to view the evidence favorably to the nonmovant as requiring the court to (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn. See *Brown v. Missouri Pacific Railroad,* 703 F.2d 1050, 1052 (8th Cir.1983); *Rogers v.*

---

1. Dace also argues that the District Court's refusal to allow him to present rebuttal testimony is reversible error regardless of the materiality of that testimony. We believe that the exclusion of such testimony would be reversible error only if the testimony would have helped Dace's case, but we do not pursue this issue further, because Dace offered sufficient proof of age discrimination or pretext to raise a jury question even without the rebuttal testimony.

*Allis-Chalmers Credit Corp.,* 679 F.2d 138, 140 (8th Cir.1982); *Hanson v. Ford Motor Co.,* 278 F.2d 586, 596 (8th Cir.1960) (Blackmun, J.).

The question arises whether the court is permitted to consider evidence that is unfavorable to the party opposing the motion.[2] While the second statement quoted above can be read to allow consideration of the evidence supporting the moving party,[3] our precedents predominantly support the general proposition that only the evidence favoring the nonmoving party (usually, as here, the plaintiff) should be considered.[4] We have recently stated flatly that on a motion for directed verdict "[a]ny evidence produced by the prevailing party must be disregarded." *Koch Security v. Secretary of the Department of Health, Education & Welfare,* 590 F.2d 260, 261 (8th Cir.1978) (citations omitted). And several times we have said that the court is not to consider questions of credibility when deciding whether to grant a directed verdict. *E.g., Banks v. Koehring Co.,* 538 F.2d 176, 178 (8th Cir.1976); *Barclay v. Burlington Northern, Inc., supra,* 536 F.2d at 267. That statement necessarily implies that evidence favorable to the moving party may not be considered, because if it were the court would have to pass on the credibility of that party's witnesses.

The Supreme Court has also stated the same rule:

It is the established rule that in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of a litigant against whom a peremptory instruction has been given.

*Wilkerson v. McCarthy,* 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497 (1949). In other words, when a motion for directed verdict or for judgment notwithstanding the verdict is made, the court must assume that all of the evidence supporting the party opposing the motion is true, and must, in addition, give that party the benefit of all reasonable inferences drawn from that evidence. The case may be taken from the jury only if no rational jury could find against the moving party on the evidence so viewed. Probably this formulation will result in fewer grants of motions for directed verdict than would result if judges were free to take cases from the jury because of what they view as very strong evidence supporting the moving party. Occasionally verdicts may be returned with which judges

---

2. It is obvious that the District Court did consider unfavorable evidence in ruling on the motion for directed verdict. The court stated:

[I]t is clear from the overwhelming evidence adduced by defendant in its case that any inference in plaintiff's favor has been destroyed and that defendant has carried the burden of establishing evidence on the record pointing to legitimate nondiscriminatory reasons for the demotion which are legally sufficient to justify a judgment in its favor. *Dace v. ACF Industries, Inc.,* 553 F.Supp. 545 (E.D.Mo.1982). This passage reads as if it belongs in a bench-tried case, for example, a claim of race or sex discrimination under Title VII. ADEA cases are triable by jury as a matter of right, and the trial court's freedom to weigh the evidence in that context must be considerably less than when the court itself is the trier of fact.

3. Several circuits have held that the court should consider both favorable and unfavorable evidence but in the light most favorable to the party opposed to the motion. See, *e.g., Feld-*

*man v. Simkins Indus., Inc.,* 679 F.2d 1299, 1303 (9th Cir.1982); *Wyly v. Burlington Indus., Inc.,* 452 F.2d 807, 808 (5th Cir.1971); *Trawick v. Manhattan Life Ins. Co.,* 447 F.2d 1293, 1295 (5th Cir.1971). Wright and Miller take the position that the court may consider any unfavorable evidence that the jury is required to believe, which they define as testimony that is unimpeached, uncontradicted, and disinterested. 9 Wright and Miller, *Federal Practice and Procedure* § 2529 (1971). See also Cooper, *Directions for Directed Verdicts: A Compass for Federal Courts,* 55 Minn.L.Rev. 903 (1971), which argues for a conclusion somewhat at variance with our precedents.

4. We are aware of two cases in which this Court endorsed a standard for directed verdicts that allowed consideration of unfavorable evidence. *State Farm Mut. Auto. Ins. Co. v. Borg,* 396 F.2d 740, 742 (8th Cir.1968); *Hanson v. Ford Motor Co., supra,* 278 F.2d at 590. However, both cases involved diversity jurisdiction, and the Court applied the Minnesota standard for directed verdicts, not the federal standard.

strongly disagree.[5] This is a price, we think, worth paying for the jury system, which is enshrined in the Bill of Rights and sanctified by centuries of history. When questions of fact are involved, common sense is usually more important than technical knowledge, and twelve heads are better than one.[6]

## II.

■ Having determined that our consideration should be limited to evidence which supports the party opposing the motion for directed verdict, we turn now to apply the standard to this case. In an age-discrimina-

tion suit, like a suit for sex or race discrimination, the plaintiff can prove his case by showing either direct evidence of discrimination or evidence that the reasons given for the adverse action are a pretext to cloak the discriminatory motive. See *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

■ As to direct proof of age discrimination, the evidence here shows that Dace was 53 when demoted from the punch-press position, for which he was qualified, and replaced by Bill Whitney, aged 40.[7] The

---

**5.** The court retains, of course, the power to grant a new trial, and this action may be taken whenever the trial court, after considering *all* the evidence, is firmly convinced that the jury's verdict will produce a miscarriage of justice.

**6.** We have stated in text what we believe to be the general rule drawn from our cases and the Supreme Court's. There may be particular situations in which the rule should not be rigidly applied. If, for example, the moving party's evidence is completely disinterested, uncontradicted, and unimpeached, or if the evidence of the nonmovant is contrary to established scientific fact, some modification of the general rule may be called for. The matter is well canvassed in Professor Cooper's illuminating article, *supra* note 3, 55 Minn.L.Rev. at 930–53. We leave consideration of possible refinements of the general rule for another day. Here, virtually all of the moving party's evidence came from employees of the defendant, and much of it, as we shall explain below, was contradicted, either by the plaintiff's proof or by other evidence offered by the defendant itself. " '[T]he mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact.' " *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 628, 64 S.Ct. 724, 729, 88 L.Ed. 967 (1944), quoting *Sonnentheil v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 408, 19 S.Ct. 233, 235, 43 L.Ed. 492 (1899).

**7.** While this Court has not articulated the elements of a prima facie case of age discrimination that apply in a situation of demotion, we have said that

a plaintiff may establish a prima facie case that his or her *discharge* violated the Age Discrimination in Employment Act by showing (1) that he or she is within a protected age group, (2) that he or she met applicable job qualifications, (3) that despite these qual-

ifications, he or she was discharged, and (4) that, after the discharge[,] the position remained open and the employer continued to seek applications from persons with similar qualifications.

*Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958, 959 (8th Cir.1978) (emphasis added). These elements would logically apply to a demotion case, too, when the fourth element is altered appropriately. See also *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 562 (5th Cir.1983); *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C.Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 488, 78 L.Ed. 2d 683 (1983). Applying these criteria to the evidence just noted, we conclude that Dace made out a prima facie case of age discrimination. (The District Court seems to have agreed. It denied ACF's motion for directed verdict made at the close of the plaintiff's case.)

It might be argued that since Dace has made out a prima facie case, he automatically is entitled to reach the jury. Specifically, one might argue that since the prima facie case is enough to reach the jury at the close of the plaintiff's case, there is no reason why it should not be equally so at the close of the defendant's case, as none of the defendant's unfavorable evidence may be considered. In response it can be argued that in age discrimination cases the requirements for a prima facie case are artificial, in the sense that they are imposed only to provide for the orderly development of evidence, rather than to establish the elements of a successful case. Without directly addressing this issue, several courts of appeals have allowed the grant of a motion for directed verdict or judgment n.o.v. in cases where the plaintiff has proved a prima facie case of age discrimination. *Bohrer v. Hanes Corp.*, 715 F.2d 213 (5th Cir.1983); *Elliott, supra; Coburn, supra.* (The Fifth Circuit cases can perhaps be explained by the fact that the Fifth Circuit allows consideration of unfavorable evidence

plaintiff also introduced evidence that tended to show that ACF would save money by demoting Dace rather than Whitney or a younger man, since ACF would have to pay more separation pay to an employee with greater seniority upon the scheduled closing of the factory in June 1984. Tr. II: 69–70, 74–75. In support of Dace's theory that the company demoted him to save money, he presented evidence that the ACF "benefits" man, Leo Goebels, was at the meeting which made final the company's decision to demote Dace. Tr. I: 158.[8] The testimony showed that Goebels was familiar with the years of salaried service of employees and their overall years of service. This evidence would support a reasonable inference that ACF demoted Dace rather than Whitney or another younger man in order to save money.

In addressing this inference the District Court stated:

> [P]laintiff has sought to introduce circumstantial evidence based upon the *seniority* achieved by plaintiff, that cost was the primary factor leading to the adverse action taken against him. From this, plaintiff would have the jury further infer that age was the true motivation. This would require an inference upon an inference, and one the Court believes does not logically follow of necessity. Simply put, plaintiff has not offered sufficient direct or indirect evidence to carry the ultimate burden of showing that age was a criterion considered by the defendant, let alone a determining consideration.

*Dace v. ACF Industries, Inc.,* 553 F.Supp. at 546 (E.D.Mo. Nov. 4, 1982) (emphasis in original).

We do not agree that the evidence showing ACF demoted Dace to save money could not have been linked to age discrimination. Here the saving of money allegedly stemmed directly from Dace's greater seniority. In a case decided after the District Court's decision, we held that discrimination on the basis of factors, like seniority, that invariably would have a disparate impact on older employees is improper under the ADEA. In *Leftwich v. Harris-Stowe State College,* 702 F.2d 686 (8th Cir.1983), we stated:

> Here, the defendants' selection plan was based on tenure status rather than explicitly on age. Nonetheless, because of the close relationship between tenure status and age, the plain intent and effect of the defendants' practice was to eliminate older workers who had built up, through years of satisfactory service, higher salaries than their younger counterparts. If the existence of such higher salaries can be used to justify discharging older employees, then the purpose of the ADEA will be defeated.

*Id.* at 691. Given the close link between seniority and age, this rationale is equally applicable when seniority instead of academic tenure is used as a basis for adverse employment action.

Dace also presented evidence to show that the reasons ACF gave for the demotion were a pretext. The District Court's memorandum did not address this evidence. In order to evaluate Dace's evidence of pretext, we first state the reasons that ACF gave for demoting Dace rather than Whit-

---

on a motion for directed verdict. See *Trawick, supra,* 447 F.2d at 1295.) Although the Supreme Court has recently taken the view that the inference of discrimination in Title VII cases created when the plaintiff makes a prima facie case drops from the case when the defendant offers proof of nondiscriminatory motives, *United States Postal Serv. Bd. of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), these suits differ from age-discrimination suits in that the former are not tried to a jury, whereas the latter are. Here it is open to argue that respect for the jury's role as factfinder requires the court to maintain the presumption of discrimination es-

tablished by the prima facie case. However, since we find that substantial evidence supports Dace's claim, over and above the bare minimum necessary to make a prima facie case, we need not resolve this issue in order to decide this case.

**8.** It is interesting to note that although the company manager of industrial relations, Randy Timmerman, testified that he, Goebels, and McDonald were at the meeting in late August, Tr. I: 158, Goebels denied being there, Tr. II: 28. Such a major discrepancy may itself be a reason for the jury to disbelieve the defendant's proffered reason for demotion.

ney or another employee, and then consider whether Dace's evidence would support a reasonable inference that these reasons were not the actual reasons for the demotion. This inquiry is not one of weighing the quality and quantity of the defendant's evidence against that of the plaintiff, but of determining whether the plaintiff's evidence supports a reasonable inference that Dace was not demoted for the reasons given.

The defendant's witnesses gave various reasons for demoting Dace. Several witnesses stated that Dace was demoted because he was the least experienced foreman in the punch-press/die-cast area, two departments which are under joint supervision. Whereas Dace had only several months experience in this area, the other foremen had considerably more. Collins had 15 years, Whitney had 20 years, and Moit had 30 years. Witnesses also mentioned that Dace was only a "B" foreman, while the others were "A" foremen. Finally, witnesses stated that past labor-relations problems that Dace had with line workers and poor performance evaluations in past years influenced the decision.

In response to the first reason, Dace offered evidence that ACF had on several occasions in the past not based demotion or layoff decisions on departmental experience but on overall company seniority. Specifically, he offered evidence that Jerry Catoor replaced Jim Ella Yancy as a foreman in the assembly department. Yancy had greater experience in the assembly department, but Catoor had more overall seniority. The evidence also showed that Don Feldhaus from the maintenance department replaced Lynn McGee in the stockroom. Feldhaus had more overall seniority but less experience in the stockroom. In addition, Dace's testimony indicates that ACF officials were evasive about telling him why he was demoted and, when pressed to supply reasons, gave him different if not inconsistent reasons. For purposes of evaluating the motion for directed verdict, we must assume that these firsthand reports of what the defendant's employees told Dace are true.

As to the reason that Dace was only a "B" foreman, Dace testified that ACF had never told him he had been reduced from an "A" foreman to a "B" foreman. Further, Dace produced an example where ACF had disregarded foreman classification in favor of overall seniority. Dace's uncontradicted testimony indicated that John Macey in the flow-test department was replaced by John Whitner, who had more overall seniority, although Macey was an "A" foreman and Whitner a "B" foreman.

As to the claim that Dace had labor-relations and performance problems, Dace submitted evidence that he received a very favorable performance appraisal just prior to the demotion, dated May 6, 1980, signed by almost all of the people who testified about Dace's prior performance problems. The appraisal stated: "Loyd appears to be dedicated toward being a good foreman and is progressing rapidly. He shows interest and a desire to excel in his performance .... Loyd is a good foreman. He is self-motivated, energetic and is adjusting to his new assignment unusually well." Pl.Ex. 5. Further, just prior to the demotion Dace received a merit salary increase.

This evidence supplies reasonable grounds for a jury to disbelieve the defendant's proffered reasons.

### III.

In short, the case was not clear enough to justify a directed verdict. If this case had been tried to the court, we would have had no difficulty in affirming, as not clearly erroneous, a finding for defendant supported by the opinion the District Court rendered here. But this case was not tried to the court. It should have been permitted to go to the trier of fact.[9]

9. This case illustrates again that it is usually better practice for a district court, faced with a motion for directed verdict, to allow the case to go to the jury, and address the issue by way of judgment n.o.v. if necessary. The jury may find for the moving party, in which case the issue disappears. If the verdict is against the moving party, and if judgment n.o.v. is granted,

The judgment is reversed, and the cause remanded for a new trial.

and if this Court decides on appeal that it should have been denied, the verdict can sim-

ply be reinstated, and no new trial is necessary.