830 F.2d 900
 2 Indiv.Empl.Rts.Cas. 1307
 Wayland TAYLOR, Appellant,
v.
E.W. COCHRAN, Mayor of the City of Corning and as an
individual; Gene Kellett; Edwin Ahrent; Clarence Thomas;
and Dorothy Johnson, Members of The City Council of Corning,
Arkansas; and The City of Corning, Arkansas, Appellees.
 No. 86-2370.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 11, 1987.
Decided Oct. 5, 1987.
Rehearing and Rehearing En Banc Denied Dec. 10, 1987.
 
 Clifford M. Cole, Piggott, Ark., for appellant.
 Winston Bryant, North Little Rock, Ark., for appellees.
 Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 In this case a jury found that the City of Corning, Arkansas wrongfully fired Wayland Taylor for exercising his first amendment rights, and awarded him damages. The district court then granted defendant's motion for judgment notwithstanding the verdict. We examine whether the district court was correct in granting defendant's motion. We conclude that the district court erred and accordingly, we reverse.
 
 
 2
 I. FACTS.
 
 
 3
 Appellant Wayland Taylor (Taylor) was hired by the City of Corning, Arkansas on April 2, 1971. Taylor was originally hired as a mechanic and later was transferred to the Street Department, and then to the Water Department. When he was fired on January 3, 1983, Taylor was working in the Water Department.
 
 
 4
 On January 1, 1983, defendant E.W. Cochran (Cochran) took office as the mayor of Corning, Arkansas. Two days later, the Corning City Council met in special session to discuss the operations of the Water and Sewer Department. During this meeting, the Council voted to lay off Taylor and one other Water Department employee.
 
 
 5
 That same day, Taylor's supervisor told him of the layoff, then Taylor met and talked with Cochran. Taylor testified that Cochran told him he was through because "you're just Jess Pulliam's man" (Cochran's opponent in the preceding election). Cochran denied making such a statement.
 
 
 6
 Taylor was not given prior notice of the action to be taken against him and was not given a hearing either before or after being laid off.
 
 
 7
 II. TRIAL COURT PROCEEDINGS.
 
 
 8
 On January 7, 1985, Taylor filed suit under 42 U.S.C. Sec. 1983 against Cochran, all members of the Corning City Council and the City of Corning. Taylor alleged (1) that his procedural due process rights under the fourteenth amendment were violated because he had a property interest in his position with the Water Department, (2) that he was entitled to a pretermination hearing, and (3) that he was entitled to a name-clearing hearing because of stigmatizing charges. Taylor sought both compensatory and punitive damages.
 
 
 9
 The defendants filed a pretrial motion for summary judgment, which the district court granted in part on September 16, 1986. The court held that Taylor did not have a property interest in his continued employment with the City of Corning, and thus his due process claim must fail as to all defendants. The court also concluded that the Council members were entitled to absolute immunity in their individual capacities because they were functioning in their legislative capacities. The court further held that in order to hold the City of Corning liable, Taylor must allege that a custom or policy existed of impermissible firing of employees on the basis of their political affiliations. Since no such policy was alleged in the complaint, the district court granted summary judgment to all the defendants in their official capacities. However, Cochran was left in the lawsuit because Taylor, although not alleging a first amendment violation in his complaint, filed an affidavit with his response to defendants' motion for summary judgment which alleged that he was laid off because he had supported Cochran's opponent in the previous election. The district court allowed the case to go to trial against Cochran because a material fact remained as to whether Cochran had told Taylor he was fired for being "Jess Pulliam's man" and also as to whether the reduction in personnel was merely a pretext for impermissible political retribution.
 
 
 10
 The case was tried before a jury on September 22, 1986, in the United States District Court, Eastern District of Arkansas, Jonesboro Division. The issues of fact were submitted to the jury by interrogatories. Interrogatory No. 1 asked: "Do you find from a preponderance of the evidence that Wayland Taylor's exercise of his first amendment rights to freedom of association was a substantial or motivating factor in the decision to lay him off from his job with the water department of Corning, Arkansas?" To which the jury answered "yes." Interrogatory No. 2 asked: "Do you find from a preponderance of the evidence that Wayland Taylor would have been laid off from his job with the Corning water department even if he had not exercised his first amendment rights?" To which the jury answered "no." The jury returned a verdict for Taylor and awarded him damages of $33,000.
 
 
 11
 After the jury determination, Cochran filed a motion for directed verdict and/or motion for judgment notwithstanding the verdict (judgment n.o.v.). The district court granted the motion on October 14, 1986, holding that the "evidence of 'other reasons' for Taylor's 'layoff' was overwhelming, and went unrebutted * * *." This appeal followed.
 
 
 12
 III. DISCUSSION.
 
 
 13
 Taylor argues that the district court erred in granting Cochran's motion for judgment n.o.v. because there was substantial evidence to support the jury's finding of impermissible interference with Taylor's first amendment rights.[1] We thus examine the applicable standards.
 
 
 14
 The standards for granting a motion for judgment n.o.v. are the same as those governing a directed verdict. Tackett v. Kidder, 616 F.2d 1050 (8th Cir.1980). A directed verdict is normally employed when: (1) there is a complete absence of pleadings or proof on an issue or issues material to the cause of action; or (2) there are no controverted issues of fact upon which reasonable persons could differ. Thus, a verdict may properly be directed when, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict. But where there is sufficient evidence in conflict, so that reasonable persons could reach different conclusions, a directed verdict is improper. Dace v. ACF Industries, Inc., 722 F.2d 374 (8th Cir.1983).
 
 
 15
 Similarly, a motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence or substituting the court's judgment for that of the jury, there can be but one reasonable conclusion as to proper judgment. Where there is sufficient conflicting evidence, or insufficient evidence to conclusively establish the movant's case, judgment n.o.v. should not be awarded. Kort v. Western Surety Co., 705 F.2d 278 (8th Cir.1983). In considering the motion, the court must view the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury verdict. Russell v. United Parcel Service, Inc., 666 F.2d 1188 (8th Cir.1981).
 
 
 16
 Dace quotes the standard used in Giordano v. Lee, 434 F.2d 1227, 1231 (8th Cir.1970), cert. denied, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971), that:
 
 
 17
 [A] motion for directed verdict is properly denied where the evidence presented allows reasonable men in a fair exercise of their judgment to draw different conclusions * * *. In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party.
 
 
 18
 Dace, 722 F.2d at 375.
 
 
 19
 In short, when a motion for directed verdict or for judgment n.o.v. is made, the court must assume that all of the evidence supporting the party opposing the motion is true, and must, in addition, give that party the benefit of all reasonable inferences drawn from the evidence. The case may be taken from the jury only if no rational jury could find against the moving party on the evidence so viewed. Dace, 722 F.2d at 376.
 
 
 20
 Based on these standards, we conclude that there was sufficient evidence to create an issue of fact for the jury regarding the true reason for Taylor's layoff, and thus the district court erred in granting judgment n.o.v. for Cochran.
 
 
 21
 The district court properly set out the applicable analytic framework governing Taylor's first amendment claim, as stated by the Supreme Court in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Under this test, the burden was first placed on Taylor to show that his conduct was a substantial or motivating factor in the decision to lay him off. Taylor met this burden, for the jury, when asked in Interrogatory No. 1 whether Taylor's political activities had been a motivating factor in his being laid off, answered in the affirmative.
 
 
 22
 The burden then shifted to the defendant, Cochran, to prove by a preponderance of the evidence that Taylor would still have been fired, for other permissible reasons, even in the absence of the protected conduct. As to this step, the district court found as follows:
 
 
 23
 The evidence of "other reasons" for Taylor's "layoff" was overwhelming, and went unrebutted: The division of the water department where Taylor worked was reduced from a five-person force to a three-person force; the City of Corning was experiencing a financial dilemma, requiring budget cuts; Taylor's position was left vacant after his layoff; Taylor and the other man laid off in the force reduction were the only two of the five employees who were not State certified to mix the chemicals used to treat the water; and Taylor could not become certified due to the fact that he cannot read and write well enough to pass a written test (a fact acknowledged by Taylor).
 
 
 24
 Each of these facts presented by the defendant was either acknowledged or uncontested by the plaintiff.
 
 
 25
 Our review of the evidence, however, convinces us that the jury had reasonable grounds to conclude, as it did, that Taylor would not have been fired but for his political affiliations. We acknowledge that there was testimony, through Cochran and two councilmen, that Taylor's firing was economically motivated; however, other evidence failed to support that the Water Department was losing money, suggested that the city officials did not know the overall financial condition of the Water Department when the decision was made to lay off Taylor, or controverted Cochran's contention that the City's financial problems required budget cuts and layoffs.
 
 
 26
 First, the evidence reflecting the financial condition of the Water Department for the 1982 calendar year was not made available to Cochran and the two councilmen until January 10, 1983; one week after Taylor was laid off. Second, Cochran testified that the Water Department finished the 1982 calendar year with some $41,742 in surplus funds. Third, during the March 1983 regular meeting, the City Council discussed reducing municipal water rates by $2.50.
 
 
 27
 Cochran contended that Taylor was the most logical choice for the layoff because he could not read or write and thus could not be certified by the Arkansas State Board of Health to operate the Water Department. However, the trial transcript reveals that witnesses were uncertain as to whether it was necessary for Taylor to be certified.
 
 
 28
 Finally, Cochran testified that he had discussed his concern over the financial problems of the Water Department with its department head, Floyd Pence, before the City Council meeting of January 3, 1983, and advised him of the action which would be taken. However, on further examination, Cochran admitted to being unsure whether he had spoken with Pence before or after the meeting.
 
 
 29
 Cochran points to other evidence which undermines Taylor's; for example, that although the City Council did not have the 1982 year-end financial report, monthly reports were available and showed financial losses, that the Council was considering reducing the water rates only in conjunction with an offsetting tax increase, and that certification was required for all Water Department employees.
 
 
 30
 We conclude, however, that these evidentiary conflicts were properly for the jury to decide. The evidence did not approach the complete level of one-sidedness necessary before judgment n.o.v. could properly be granted. "[F]or an order entering judgment notwithstanding the verdict to be proper, all the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party." Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 136 (8th Cir.1985) (emphasis added). As the Dace court pointed out:
 
 
 31
 This evidence supplies reasonable grounds for a jury to disbelieve the defendant's proffered reasons. * * * In short, the case was not clear enough to justify [a judgment n.o.v.]. If this case had been tried to the court, we would have had no difficulty in affirming, as not clearly erroneous, a finding for defendant supported by the opinion the District Court rendered here. But this case was not tried to the court. It should have been permitted to go to the trier of fact.
 
 
 32
 Dace, 722 F.2d at 379.
 
 
 33
 Accordingly, we reverse the judgment of the district court granting Cochran's motion for judgment n.o.v., and we reinstate the jury's verdict.
 
 
 34
 HENLEY, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 35
 I concur in footnote 1 of the panel's decision affirming the district court's granting of summary judgment. I dissent from the remainder of the panel's opinion which holds that the district court erred in granting defendant Cochran's motion for judgment notwithstanding the verdict.
 
 
 36
 The gravamen of this case is that Taylor claims he was laid off from his position in the Water Department of the City of Corning because the newly elected mayor, E.W. Cochran, believed that Taylor was "just Jess Pulliam's man" (Cochran's opponent in the mayoral election).
 
 
 37
 The allocation of the burden of proof in a case of this type is two-fold. "Initially ... the burden ... [is] upon [plaintiff] to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'--or to put it in other words, that it was a 'motivating factor' in the ... decision [to fire him]." Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If plaintiff carries that burden the defendant may still avoid liability if he can show by a preponderance of the evidence that the same decision would have been reached in the absence of the protected conduct. Id. In granting Cochran's motion for judgment n.o.v. the district court focused on Cochran's burden and concluded that the evidence that the same decision would have been made "was overwhelming, and went unrebutted." For reasons to be stated, I believe the district court's decision in this regard was correct. In addition, I believe that the district court's decision should be upheld on another ground argued by Cochran in his motion for judgment n.o.v. but not directly addressed by the district court--Taylor failed to show that constitutionally protected conduct was a motivating factor in his firing.
 
 
 38
 The evidence, read in the light most favorable to Taylor, does support the conclusion that Cochran harbored a constitutionally impermissible motivation. Cochran, however, did not lay off Taylor. Taylor was laid off upon unanimous vote of the city council. Cochran did not vote on that decision. The two councilmen who testified at trial (one of whom made the motion leading to Taylor's layoff) did not disclose any constitutionally impermissible motivation for their actions.
 
 
 39
 In McGee v. South Pemiscot School District R-V, 712 F.2d 339 (8th Cir.1983), we held that where a school board's decision to discharge a teacher turned on a single vote and the teacher met his Mt. Healthy burden of demonstrating impermissible motivation on the part of one board member who voted against him, he is entitled to relief. In the present case the only connection Taylor has shown between the adverse employment decision and Cochran's impermissible motivation is that Cochran called the city council meeting. Taylor has not shown impermissible motivation by any of the councilmen who made the decision to lay him off. In McGee I was "unwilling to assume that a factor that motivates a single board member motivates the board to such an extent as to" sustain plaintiff's burden of proof under Mt. Healthy. McGee, 712 F.2d at 345 (Henley, Senior Circuit Judge, dissenting).
 
 
 40
 Thus, in this case I am even less willing to assume that Cochran's improper motivation which may have led to calling the council meeting should be imparted to the councilmen who ultimately made the decision to lay off Taylor. Cochran's disposition toward Taylor simply cannot, without more, be translated into the motivating factor of the council's decision. Mt. Healthy makes plain that it is the decisionmaker's motivation that is to be plumbed, Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 270, 97 S.Ct. 555, 566, 50 L.Ed.2d 450 (1977), not that of persons peripheral to the decision making process. Accordingly, I would hold that Taylor failed to sustain his initial burden of proof and affirm the district court's granting of judgment n.o.v.
 
 
 41
 I also believe that the district court correctly granted judgment n.o.v. in Cochran's favor because his evidence that the council would have reached the same decision in the absence of improper motivation went unrebutted. Cochran presented evidence that the decision to lay off two Water Department employees was for financial reasons. The panel's argument that the jury could have found the financial explanation to be pretextual is unpersuasive. First, the panel contends that the financial condition of the Water Department was not made known to the city council until one week after Taylor was laid off. This is incorrect. Although the final yearly report did not become available until that time, the councilmen received monthly fiscal reports. The councilmen knew by looking at these monthly reports in October and November when they prepare the following year's budget that the Water Department was experiencing financial difficulty. Thus, even though the decision to lay off Taylor was taken before the final year end financial statement was prepared, it is unrebutted that the councilmen were well aware of the Water Department's financial condition.
 
 
 42
 The panel next contends that the financial motivation was pretextual because the city ended the year with surplus funds. This is true. A municipality, however, does not have the luxury of deficit spending as does the federal government. In addition, the Water Department needed to maintain a surplus account to cover major equipment breakdown. In fact, the yearly statements prior to Taylor's layoff show that the Water Department's surplus was shrinking--they were losing money.
 
 
 43
 Finally, the panel points to the fact that the city council was considering reducing the municipal water rates as evidencing a lack of financial hardship. This reduction, however, would only go into effect if the voters approved an increase of one cent in the city sales tax. When the sales tax measure failed at the polls, no further consideration was given to reducing water rates. Thus, the city council was only interested in restructuring the way Water Department revenues were raised, not reducing them.
 
 
 44
 The evidence that the Water Department was losing money was not illusory and was unrebutted. The evidentiary conflicts the panel finds are not true conflicts, but are the jury's disregard of the unrebutted evidence.
 
 
 45
 Finally, Cochran claims that Taylor was singled out to be laid off because he was not state certified to add the chemicals to treat the city's water. Because Taylor can neither read nor write, it was unlikely that he could pass the written certification test. Although there may be some doubt as to whether it was necessary for Taylor to become certified, it does not follow that either lack of certification or illiteracy was an invalid criterion for the council to apply, particularly when the potability of the city's drinking water was concerned.
 
 
 46
 From the reversal of the judgment granting Cochran's motion for judgment n.o.v., I respectfully dissent.
 
 
 
 [1]
 Taylor sets forth two other arguments: (1) that he had a property interest in his continued employment, and (2) that the district court failed to consider his affidavit alleging that his supervisors had advised him that he could not be fired or disciplined without cause. Both of these arguments address the district court's grant of summary judgment as to all the defendants but Cochran. In his brief, however, Taylor concedes that any property interest in continued employment with the City of Corning does not rest on an express contract. Moreover, Taylor does not claim that he was employed for a fixed term, or that there existed any express provision in a personnel manual or regulation prohibiting termination except for cause. This court's recent opinion in Stow v. Cochran, 819 F.2d 864 (8th Cir.1987), is thus dispositive of Taylor's arguments. Stow, also an action against Mayor Cochran by an employee of the City of Corning, held that the city's employee handbook created no property rights under Arkansas law, and that any oral assurances of permanent employment were unauthorized and unenforceable. Although Arkansas case law has recently been slightly liberalized in favor of employees, see, Gladden v. Arkansas Children's Hospital, 292 Ark. 130, 728 S.W.2d 501, 505 (1987), the City of Corning's employee handbooks would still be insufficient to create a property interest, because they do not expressly state that employees can be discharged only for enumerated causes. See Drake v. Scott, 823 F.2d 239 (8th Cir.1987). Accordingly, we hold Taylor's arguments as to a property interest and binding oral assurances to be without merit