**WESTERN AMERICAN, INC. d/b/a Western Adhesives of Missouri, Appellee,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Appellant.**

**Alexander and Alexander, Inc.**

**WESTERN AMERICAN, INC. d/b/a Western Adhesives of Missouri, Appellant,**

v.

**The AETNA CASUALTY AND SURETY COMPANY; Alexander and Alexander, Inc., Appellees.**

**Nos. 88–2562, 88–2563.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1989.

Decided Oct. 2, 1990.

---

R. Frederick Walters, Kansas City, Mo., for appellant.

Holland C. Capper, Kansas City, Mo., for appellee Western American.

William H. Sanders, Sr., Kansas City, Mo., for appellee Alexander & Alexander.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and BROWN,* Senior Circuit Judge.

WOLLMAN, Circuit Judge.

A fire destroyed most of Western America, Inc.'s (Western) adhesives manufacturing plant in September 1985. A jury awarded Western $759,616.00 for the loss of gross earnings resulting from the fire. Western's insurer, Aetna Casualty & Surety Company (Aetna), appeals from the district court's [1] denial of its motion for judgment notwithstanding the verdict or for new trial. Western cross appeals from the denial of its motion for judgment notwithstanding the verdict or for new trial. We affirm.

I.

Aetna insured Western through its agent, Alexander & Alexander (A & A). Following the fire, Aetna paid the casualty losses for Western's plant and its contents. A dispute arose, however, about the interpretation of the gross earnings and extra expenses clauses of the policy. Aetna paid for the loss of gross earnings for 5¼ months of suspension of business but refused to pay for any extra expenses incurred to reduce losses during the rebuilding period.

---

* The HONORABLE JOHN R. BROWN, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Eastern and Western Districts of Missouri.

Western sued Aetna under the gross earnings endorsement for lost rents, extra expenses, and business interruption damages incurred during the entire ten-month rebuilding period. Western sued A & A for negligent failure to obtain extra expenses coverage. The jury awarded Western the full extent of its coverage under the gross earnings clause, but denied recovery for lost rents and extra expenses from Aetna or A & A.

## II.

Aetna contends on appeal that Western failed to prove profit and expense figures necessary to calculate business interruption damages under the gross earnings clause. Aetna also argues that the district court made a number of erroneous evidentiary rulings that justify a new trial.

■■■ A judgment notwithstanding the verdict is proper only when the jury's verdict is without an evidentiary basis. The standard that must be met before a jury's verdict may be set aside is a rigorous one. In ruling on a motion for a judgment notwithstanding the verdict, the district court must (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence. *Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 136 (8th Cir.1985). *See also Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990); *Dace v. ACF Indus.*, 722 F.2d 374, 376 (8th Cir.1983).

■■■ The gross earnings endorsement of the policy provides that Aetna will be liable for:

 a. the actual loss sustained by the insured resulting directly from necessary interruption of business, but not exceed-

ing the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed commencing with the date of such damage or destruction and not limited by the date of expiration of this policy. Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the insured with the same quality of service which existed immediately preceding the loss; and

  \*  \*  \*  \*  \*  \*

 d. such expenses as are necessarily incurred for the purpose of reducing loss under this endorsement (except expense incurred to extinguish a fire), and such expenses, in excess of normal, as would necessarily be incurred in replacing any finished stock used by the insured to reduce loss but in no event shall the aggregate of such expenses exceed the amount by which the loss under this endorsement is thereby reduced. Such expenses shall not be subject to the application of the Contribution Clause.

Tracking the wording of the policy, the district court charged the jury in Instruction 17:

 If your verdict is for Plaintiff Western Adhesives on its claim for loss of gross earnings due to business interruption, then, in determining Plaintiff Western Adhesive's damages under the Policy for Business Interruption (Gross Earnings) you should first determine from the evidence the length of the interruption period insured by the policy. If you determine from the evidence that there was a delay attributable to Defendant Aetna Casualty's failure to perform its duties under the policy, you may properly include that length of time in your calculation.

 If you find Western Adhesives suffered a loss of gross earnings due to

business interruption as a direct result of the fire, you should award Western Adhesives for the actual loss of earnings you believe it sustained as a direct result of the fire (business interruption) plus any expenses Plaintiff incurred in reducing its loss of earnings.

You are instructed that actual loss of earnings means the difference between the net profit you find Western Adhesives would have earned during the period of interruption and the net profit you find Western Adhesives did earn during the period of interruption.

If you find in favor of plaintiff Western Adhesives, then you must determine the date on which the proof of loss for loss of gross earnings (business interruption) coverage was filed and award plaintiff Western Adhesives interest from that date at the rate of 9% per annum.

We considered a substantially similar Aetna policy and approved essentially the same jury instruction in *Associated Photographers, Inc. v. Aetna Cas. & Sur. Co.,* 677 F.2d 1251, 1254 (8th Cir.1982). We find that the formula set forth in Instruction 17 is equivalent to that in the language of the policy, as we did in *Associated Photographers.* Accordingly, the district court did not err in giving the instruction.

Aetna claims that Instruction 17 was misleading because it did not specifically instruct the jury to consider the *theoretical* time period it would have taken Western to rebuild and because it directed the jury to add time to the business interruption period for delays caused by Aetna. In *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.,* 843 F.2d 1140, 1143 (8th Cir.1988), we stated that the insurance company should be liable for business interruption coverage for the reasonable time needed for the insured to reenter business plus any delay attributable to the insurance company's failure to perform its duties under the policy. We reaffirm that position here.

■ The district court charged the jury to consider "the length of the interruption period insured by the policy." The policy insured gross earnings for the period it would have taken for Western to reenter business had it acted with "due diligence and dispatch," a reasonable time period. The length of that reasonable time period was hotly disputed at trial, and we find that the jury had before it sufficient evidence to determine the period to be greater than the 5¼ months argued by Aetna.

Aetna argues that Western failed to offer evidence of the net profit Western would have earned had there been no fire and the net profit Western actually earned after the fire, as required under the damages formula in Instruction 17. The district court found that the jury reasonably could infer this information from the evidence presented. We agree. The jury had evidence of both potential profits and actual profits during the suspension of business while Western rebuilt. Western proved a loss of gross earnings in excess of policy limits of $759,616.00 through its experts. Aetna offered no contrary evidence. We cannot say that the jury's verdict was without basis, and we affirm the district court's denial of j.n.o.v. on this point.

Aetna claims that Western could only prove extra expenses under the gross earnings endorsement by doing a "total shutdown" calculation, evidence of which Western did not present to the jury. Aetna cites no case to support this interpretation of the policy language. We perceive Aetna's argument to be that extra expenses to reduce loss can not be more than the reduction in loss itself, which is a fair reading of the policy language. We do not agree, however, that the total shutdown figure was necessary to prove that the extra expenses that Western incurred were less than the reduction in loss generated by the expenses.

Western produced evidence that the expenses which helped to reduce its loss totaled approximately $274,000. Western's experts were familiar with the terms and meaning of the policy and were requested to testify to the total extra expenses that "served to reduce the loss sustained by the fire." We agree with the district court that the evidence was sufficient for the jury to determine the extra expenses which served to reduce the loss to Western's busi-

ness due to the fire, and we conclude that Aetna has established no error in the district court's denial of its motion for a new trial.

### III.

Aetna moved for j.n.o.v. or a new trial based on the award of prejudgment interest to Western beginning June 27, 1986. Aetna asserts that there is no evidence to support that date. We disagree. Ken Ritter, Western's public insurance adjustor, testified that the parties agreed not to file a proof of loss until there was an agreement on the amount that would be paid. At trial, Aetna's counsel told the jury that June 27 was the date when Western received Aetna's last payment for gross earnings coverage. Aetna's Exhibit No. 189 shows the last date of payment on the gross earnings endorsement to be June 27, 1986. After considering the evidence in the light most favorable to Western, we cannot say that the jury's verdict was without an evidentiary basis on this point, nor can we say that Aetna has established the basis for the grant of a new trial.

### IV.

Aetna argues that the district court's erroneous rulings on several evidentiary issues justify a new trial. For example, Aetna claims that the court impermissibly allowed deposition testimony of two of Western's experts although neither had actual knowledge of the particular facts of this case. Although the court allowed this testimony, it did place certain limitations on its use, a step well within the district court's discretion. Additionally, Aetna argues that the district court erred in refusing to allow Aetna to question one of Western's experts because of the speculative nature of the expected answers. Finally, Aetna argues that Western's Exhibit 58, which showed an expert's calculation of damages for the loss of gross earnings, should have been excluded. We find that the district court did not abuse its discretion in these matters.

### V.

Western appeals from the denial of its motion for judgment notwithstanding the verdict, or in the alternative for a new trial. Western argues that the district court erred in giving certain instructions and contends that the jury's verdict in favor of Aetna under the extra expense endorsement is not supported by the evidence. Western argues that reformation of the contract between Western and A & A is necessary to reflect the extra expense coverage. Western also argues that the evidence at trial was sufficient to submit to the jury the issue of Aetna's vexatious refusal to pay.

The jury heard conflicting evidence as to whether Western had notice that the extra expense coverage was being deleted. The jury had before it a letter from A & A to the president of Western notifying Western that "[e]ndorsements are in process at this time deleting the Extra Expense and Colorado locations." There was testimony that Western had specifically rejected extra expense coverage and was working to relieve itself of the burden of the premium payments. Accordingly, we conclude that the district court did not err in giving the challenged instructions and that the jury's verdict denying Western's extra expense claim was amply supported by the evidence. For the same reason, Western's appeal for reformation is likewise without merit.

We find no merit in Western's argument that Aetna refused to pay without justification. Any delay by Aetna was taken into account by the jury in determining the business interruption coverage under the gross earnings endorsement. We find that the district court did not abuse its discretion not submitting this issue to the jury. Western has demonstrated no basis for the grant of a new trial.

### CONCLUSION

The judgment is affirmed.